IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| JOSEPH SCIARRINO, | * | Chapter 13 |
| Debtor | * | |
| | * | Case No.: 1-04-05701MDF |
| JOSEPH SCIARRINO, | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| HELEN WILHELM, | * | |
| Respondent | * | |

## OPINION

### Procedural History

Before the Court is the motion of Joseph Sciarrino ("Debtor") to assume a "Lease Agreement with Purchase Option" ("the Agreement") for a commercial property located at 316 North Second Street in the City of Harrisburg. Debtor leased the property from Helen Wilhelm ("Wilhelm") who filed an objection to the motion to assume the lease. Wilhelm argues that the lease expired pre-petition by its own terms or, in the alternative, that the Debtor has failed to cure the default and provide adequate assurance of future performance under the lease. A hearing was held on the matter on December 21, 2004. Briefs have been filed, and the case is ready for decision. I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (M) and (O).[1]

---

[1] This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

1

## Factual Findings

On August 15, 2002, Debtor leased the ground floor of a three-story building for the purpose of operating a restaurant known as Mezzaluna. The two upper stories of the structure comprise several boarding rooms and separate bathrooms. The lease for the premises was drafted by Debtor's attorney and provided that rent payments were to commence October 15, 2002. In the interim, Wilhelm was required to purchase materials for Debtor to use to complete certain renovations to the leasehold premises. The initial period of the lease was to be two years, commencing August 15, 2002 and ending August 15, 2004. Rent for this two-year period was $22,000.00 payable in monthly installments.

The Agreement provided Debtor with an option to purchase the property for $240,000.00. In order to exercise the option, Debtor was required to pay Wilhelm a $10,000.00 non-refundable deposit before August 15, 2003 and to consummate purchase of the property by August 15, 2004. Debtor paid the $10,000.00 deposit to Wilhelm in a timely manner, but failed to consummate the purchase under the terms of the option. The Agreement did not explicitly state what effect Debtor's failure to consummate the purchase would have on future performance of the lease.

Several provisions in the lease are relevant in determining whether the lease expired pre-petition and whether Debtor has failed to cure defaults under the lease. First, the term of the lease is described in the Agreement as follows:

> A *(sic)* initial period of two (2), commencing on August 15, 2002 ("Commencement Date") and ending on August 15, 2004 ("Expiration Date"). Tenant will have an option to extend the agreement for an additional period of three (2) *(sic)* years after the Expiration Date and two (2) additional periods of five (5) years each.

Debtor argues that the lease was for an initial period of two years and that he exercised his option

2

to extend the lease for an additional three year term prior to the expiration of the lease. Wilhelm asserts that once Debtor exercised the option to purchase, he no longer could extend the lease. Further, even if he were entitled to extend the lease, he failed to give her timely notice of his desire to extend the term.

Alternatively, even if the lease did not expire prepetition, Wilhelm argues that Debtor defaulted on various covenants under the Agreement and has failed to cure those defaults. The Agreement required Debtor to place all utilities in his own name, which Debtor failed to do.[2] Debtor failed to contract for utilities in his own name in part due to the refusal of the City of Harrisburg to provide a separate meter for Debtor's water usage. Debtor has never received a bill in his own name for water, sewer services or trash removal at the leased premises and so he has never paid for them. Wilhelm attempted to collect Debtor's portion of these utility bills from Debtor, but he disputed the amount and refused to pay.

Wilhelm also testified about complaints she had received from other tenants of the building regarding late night operations at Mezzaluna. On two occasions, Debtor opened the restaurant as an "after-hours" operation, where patrons of nearby nightclubs could bring their own alcoholic beverages and dine after the nearby nightclubs closed. Tenants complained to Wilhelm about the noise from the activities at the restaurant. She argues that Debtor's operations as an "after-hours" club has violated the covenant in the lease that provides that the lessee will

---

[2]The Agreement states under the heading "Utilities:"
Tenant shall be responsible for arranging, and contracting in its own name if necessary, all utility services necessary for the operation of the Property, including establishment of any required deposits, and payment of any and all utility charges incurred during the term. Such utility charges shall include water, natural gas, telephone, cable television, sanitary sewer, electricity and storm water management fees.

3

refrain from committing "any nuisance or act which may disturb the quiet enjoyment of any tenant."

In 2003, Debtor filed a claim in state court against Wilhelm to recover certain funds that he claimed were due him as a result of his renovations to the restaurant. In turn, Wilhelm filed a counterclaim for unpaid rent for the period between October 2002 and May 2003. Ultimately, the district justice entered judgment against Debtor on the claim and against Wilhelm on the counterclaim. Debtor paid the rent for each month after May 2003, but the rent payments were not timely, resulting in accrued late charges totaling $520.00.

## Discussion

Section 365 of the Bankruptcy Code enables a debtor to assume an unexpired lease under certain conditions. An unexpired lease on which a debtor has defaulted pre-petition may nonetheless be assumed if the debtor 1) cures or provides adequate assurance that he will promptly cure the default; and 2) provides adequate assurance of future performance under the contract. 11 U.S.C. §365(b)(1). The debtor may not assume an unexpired lease if it is "a lease of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. §365(c)(3).

The dispute in the instant case centers on the Agreement's cryptic language regarding the term of the lease. Debtor testified that the Agreement was drafted for him by his former wife's best friend, an attorney in Conshohocken, Pennsylvania. Wilhelm confirmed Debtor's statement, testifying that Debtor would not agree to the use of her form lease and insisted on drafting the Agreement.

4

"'A provision for extension or renewal, in order to be enforceable, must be definite and certain in its terms, particularly the terms with respect to the duration of the additional term and the amount of rent to be paid.'" *McArthur v. Rosebaum Co. Of Pittsburgh,* 85 F.Supp. 5, 10 (W.D. Pa. 1949) (*quoting*, 51 C.J.S. Landlord and Tenant, §56). *See also, Indig v. Stern*, 404 Pa. 12, 18, 170 A.2d 554, 557 (1961). Ordinarily, "an option for a renewal or extension of a lease is to be construed in accordance with the intent of the parties as revealed by the language of the agreement and the practical construction placed on it by the parties, and it is generally considered that ambiguities will be resolved in favor of the tenant." *Indig,* 404 Pa. at 18, 170 A.2d at 557. However, "under Pennsylvania law . . . , 'when doubt arises as the result of uncertainty concerning the meaning of language used in a lease, its provisions will be construed most strongly against the party that drafted the lease.'" *Federal Realty Inv. Trust v. Kids Wear Boulevard, Inc.*, 1996 WL 92055, *8 (E.D.Pa.) (*quoting Cusamano v. Anthony M. DiLucia, Inc.,* 421 A.2d 1120, 1123 (Pa.Super.Ct.1980))*. See also West Penn Realty v. Acme Markets, Inc.,* 224 Pa. Super. 202, 303 A.2d 836 (1973).

"It is well settled law that a lease agreement is in the nature of a contract, and is controlled by principles of contract law." *Warren v. Greenfield,* 407 Pa. Super. 600, 606, 595 A.2d 1308, 1311 (1991) (collecting cases). When a court is asked to interpret the meaning of a contract, "the intent of the parties is paramount, and [the court's] objective is to ascertain the parties' intent as it is manifestly expressed in the agreement itself." *Id.* A contract must be interpreted as a whole, and the intention of the parties must be ascertained from the entire instrument. *First Philadelphia Realty Corp. v. Albany Savings Bank,* 601 F.Supp. 1012 (E.D.Pa.1985). Each and every part of a contract must be taken into consideration and given effect, if possible

5

and the intention of the parties must be ascertained from the entire instrument. *Marcinak v. Southeastern Greene School District,* 375 Pa.Super. 486, 544 A.2d 1025, 1027 (1988).

The "manifest expression" of the instant parties' intent regarding the extension of the lease is difficult to ascertain when the provision at issue is unclear. That provision bears repeating:

> A (*sic*) initial period of two (2), commencing on August 15, 2002 ("Commencement Date") and ending on August 15, 2004 ("Expiration Date"). Tenant will have an option to extend the agreement for an additional period of three (2) (*sic*) years after the Expiration Date and two (2) additional periods of five (5) years each.

The introductory phrase "initial period of two" is obviously incomplete. It can be understood to mean "two years" only because the specific dates of August 15, 2002 and August 15, 2004 are explicitly stated. The sentence which follows it does not fare as well. It contains no clue, implicit or explicit, as to whether the "additional period" by which the lease could be extended was intended to be "three" years or "2" years. However, a chart inserted several pages later in a different section of the lease indicates that the total period, including all possible extensions, was to be fifteen years. Assuming that this chart reflects the parties' intentions regarding the entire possible duration of the lease, I find that the intended length of the first "additional period" was to be three years.[3]

The parties' dispute in the instant case centers on whether or not the terms of the Agreement called for the lease to expire if the option to purchase was not consummated. The

---

[3] This figure is calculated as follows. The "initial period" of the lease was to be two years. The two five-year periods would aggregate ten years. These periods together aggregate twelve years. The total possible period, according to the chart, was fifteen years. Therefore, the remaining period, which is ambiguous in the "lease term," provision is determined to be three years.

6

parties agree that the option to purchase was not consummated and so it expired. Debtor contends that the Agreement nonetheless permitted him to continue to extend the lease for thirteen more years – first in an initial renewal period of three years, and then in two additional periods of five years each. Wilhelm maintains that the lease terminated when the option to purchase expired.

To evaluate the merits of Wilhelm's interpretation of the lease, the Court must examine two critical paragraphs, which provide as follows:

> **OPTION TO PURCHASE.** Landlord hereby grants to Tenant or his successor/designee/assignee an exclusive irrevocable option to purchase the property and land located (sic) 316 North 2nd Street, Harrisburg, PA 17101 (Leased Premises) for the total sum of $240,000. This option shall be exercised at the expiration of the initial term of two (2) years and shall be at the sole and exclusive discretion of Lessee. Notwithstanding the foregoing, Tenant will be required to give notice of his intention to exercise the option to purchase at the end of the first year of the initial term of this Lease Agreement. If Tenant gives such notice, Tenant shall be required to immediately give Landlord a non-refundable deposit of $10,000 which shall be forfeited if Tenant fails to purchase the Property for reasons attributable to Tenant.

> **AGREEMENT OF SALE.** If Tenant should exercise the Option to Purchase the property at 316 North 2nd Street, Harrisburg, PA 17101 as set forth in Paragraph 14 above, the parties shall immediately enter into a mutually agreed upon Agreement of Sale for such property for the purchase price of $240.000. This Lease Agreement shall terminate on the date of Closing set forth in such Agreement of Sale. The non-refundable deposit of $10,000 required by Paragraph 14 herein shall be applied to and reduce the purchase price.

Neither of the above-quoted paragraphs contain a cross reference to the "Lease Term" provision which sets forth the option to extend the lease. Thus, it would appear that the option to purchase and the lease term are unrelated and that the ability to extend the lease term was not intended to be affected by the option to purchase, except to the extent that Debtor's consummation of the option to purchase would alleviate the need for him to continue to lease the

7

property.  It follows that the lease extension provision would be needed only if Debtor did not exercise the option to purchase.  Thus, Wilhelm's position that the option to extend the lease terminated when Debtor failed to consummate the purchase is not supported by the provisions of the Agreement.  Therefore, I conclude that Debtor's failure to consummate the purchase of the property did not terminate the lease as of August 2004.

This conclusion does not necessarily address the issue of whether Debtor timely informed Wilhelm of his intent to extend the lease, as the Agreement also required.  Debtor alleges that he did so, both orally and in writing.  Wilhelm credibly denies that Debtor ever orally informed her of his intent to renew,[4] and she denies having received the letter that he introduced into evidence to prove that he informed her in writing.  Debtor's letter is notarized and bears a timely date.  A notary public's certificate is prima facie evidence of the due execution of a written instrument.  *In re Tippet,* 2004 WL 2495405, *4 (Bankr.E.D.Pa.); *Williamson v. Barrett,* 147 Pa. Super. 460, 24 A.2d 546 (1942).  The notary seal is entitled to a presumption of regularity, and when it is claimed that a signature was not made as indicated before the notary public who certifies to this fact, the party complaining has the burden to overcome the presumption of regularity by clear and convincing evidence.  *Tippet,* at *4; *Popovitch v. Kasperlik*, 70 F. Supp. 376 (W.D. Pa. 1947). Wilhelm's denials of ever having seen the letter are self-serving and uncorroborated.  While Wilhelm did show that the notary was a friend of Debtor's with whom he had lived for a period of time, this showing is not sufficient, under the above-cited standards, to prove that the letter was not authentic.  For these reasons, I must conclude that Debtor provided timely notice of his intent to extend the lease, and thereby he effectively extended the term.

---

[4]Both parties testified that they were not on speaking terms for most of the period at issue.

8

Case 1:04-bk-05701-MDF    Doc 46    Filed 03/18/05    Entered 03/18/05 14:26:02    Desc
Main Document     Page 8 of 10

Wilhelm asserts that even if the lease had been effectively extended, Debtor's defaults on the lease prevent him from assuming it under 11 U.S.C. §365(b)(1)(A). Under that section, Debtor must cure all pre-petition defaults in order to be able to assume the contract. Wilhelm asserted and proved that there were numerous monetary and non-monetary pre-petition defaults by Debtor, including failure to timely pay rent and utilities, failure to maintain insurance, and breach of his covenant not to disturb the quiet enjoyment of other tenants. Under 11 U.S.C. §365(b)(1)(A), however, these defaults do not preclude Debtor from assuming the lease. Section 365(b)(1)(A) allows a debtor to assume a lease if, at the time of the assumption, he cures or provides adequate assurance that he will cure the defaults. His failure to pay reasonable utility charges can be cured at this time. He can be required to show proof of insurance going forward. The evidence at trial indicated that the monetary defaults could be cured by a payment from Debtor in the amount of $5,427.63 ($4,907.63 utility charges + $520.00 late charges).

Wilhelm argues, however, that Debtor's inability to cure the default created by his disturbance of the quiet enjoyment of other tenants on two occasions also precludes him from assuming the lease. Her position is that he cannot go back in time and undo the disturbances, and so the default can never be cured. Such kinds of defaults have come to be known as "historical fact" defaults. *In re Claremont Acquisition Corp.,* 113 F.3d 1029 (9th Cir. 1997). In *Claremont*, the Ninth Circuit held that a debtor could not assume a motor vehicle franchise agreement because of a historical fact default – specifically, the debtor's violation of the franchise agreement by its failure to open the dealership for business for seven consecutive days. *Claremont* has not been widely accepted by the Bankruptcy Courts, as the Court noted in *In re Walden Ridge Development, LLC,* 292 B.R. 58 (Bankr. D. N.J. 2003). "This court finds the

9

'historical fact' exception limited, at best, to franchise cases and certain other non-monetary defaults not easily cured...." *Id.* at 67.

> Other courts have also limited or failed to follow the holding in *Claremont. See In re Vitanza,* 1998 WL 808629 (Bankr. E.D. Pa.); *In re Bankvest Capital Corp.*, 270 B.R. 541 (Bankr. D. Mass. 2001). In addition legal commentators have expressed strong criticism of *Claremont*. James I. Stang, *Assumption of Contracts and Leases: The Obstacle of the Historical Default*, 24 Cal. Bankr. J. 39 (1998); William P. Weintraub, Esq., *Historical Defaults and Cross-Defaults; Here a Default, There a Default, Everywhere a Default, Default, Default*, 26 Cal. Bankr. J. 286 (2003).

*Walden Ridge,* at 67, n. 2.

This Court also concludes that the historical fact strictures against lease assumption are not in keeping with the fresh start purposes of the Bankruptcy Code or the rehabilitative purposes of Section 365. The non-monetary default on which Wilhelm would have the Court deny relief to Debtor is simply too inconsequential to form a basis for a complete denial of Debtor's otherwise-viable right to cure.

For these reasons, I conclude that Debtor may assume the lease upon the condition that he promptly cures all monetary defaults and provides adequate assurance of future performance. Since the defaults are numerous, an Order will be issued setting forth the specific conditions for assumption of the lease.

> BY THE COURT,
>
> Mary D. France
> Bankruptcy Judge

Date: March 18, 2005

*This electronic opinion is signed and filed on the same date*